**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Walter Bryan ROBERSON,**
**Defendant–Appellant.**

**No. 89–8016.**

United States Court of Appeals,
Eleventh Circuit.

April 2, 1990.

James W. Howard, Atlanta, Ga. (court-appointed), for defendant-appellant.

Amy D. Levin, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, TUTTLE and RONEY[1], Senior Circuit Judges.

TUTTLE, Senior Circuit Judge:

This is an appeal from the conviction and sentence of the defendant for aiding and abetting in the possession with intent to distribute cocaine under two separate counts of a superseding indictment and forfeiting substitute property for an automobile, pursuant to 21 U.S.C. § 853(a)(2), under an additional count.

## I. STATEMENT OF THE CASE

Appellant was indicted under a four-count superseding indictment, the first being for conspiracy to possess with intent to distribute cocaine, the second with aiding and abetting in the possession with intent to distribute in excess of 100 grams of cocaine on June 25, 1988, the third seeking forfeiture of a Ford Bronco, pursuant to 21 U.S.C. § 853(a)(2), and the fourth with aiding and abetting in the possession with intent to distribute cocaine on March 23, 1988.

Defendant filed a motion to suppress evidence obtained following appellant's arrest on March 23, 1988, which evidence was proffered by the government in support of Count 4. The trial court adopted the magistrate's recommendation that the motion to suppress be denied and the case proceeded to trial which resulted in a verdict of acquittal on Count 1 and a verdict of guilty on the three remaining counts.

Appellant was sentenced to 10 years imprisonment followed by five years supervised release on Count 2 and to five years imprisonment followed by three years of supervised release on count 4. The court also ordered a new Bronco truck driven by appellant forfeited.

## II. STATEMENT OF THE FACTS

### A. *As to Count 1:*

The defendant in his brief states:

Several days before June 25, 1987, defendant purchased about three ounces of cocaine from Almand. However, the purported cocaine was of extremely poor quality and virtually worthless.

It is undisputed that defendant was dissatisfied with the substance and telephoned Almand from whom he had obtained it, to insist that it be replaced by "quality" cocaine. Thereupon, on the afternoon of June 25, defendant met with Almand and returned the substance to him. Almand did not produce any cocaine in exchange but stated: "It will be here on Sunday." Almand, who testified in accordance with a plea bargain, stated that the package that he received from Roberson was about the size of a loaf of bread, although Roberson, in his testimony at trial, stated that it contained only three ounces of "bad cocaine."

On June 18, 1985, undercover FBI agent David W. Recane had made a telephone

---

1. *See* Rule 34–2(b) Rules of the United States Court of Appeals for the Eleventh Circuit.

deal with one L.C. Shaw under which Shaw was going to sell two kilos of 94–95 percent pure cocaine to Recane for $70,000. This cocaine was to be supplied by Roberson's father for whom appellant was working. This deal was supposed to take place on June 25 at Northlake Mall, in the vicinity of Atlanta. Prior to that, defendant Roberson appeared at his father's business and handed to Almand, an employee of the elder Roberson, a package in a bag described as a "crown royal" bag, described by later witnesses at the trial as being about the size of a loaf of bread or approximately the size of a football. There was evidence at trial that this same bag was then taken to the meeting with the undercover agent Recane at Northlake Mall, where it was given by Shaw to Recane. Shaw stated that it was 31 ounces of cocaine.

This substance, which a field test at the time failed definitely to establish as cocaine, was later tested by a forensic chemist in Miami and found to be 82 percent pure cocaine.

The defendant, who took the witness stand, testified that the substance that he turned over to Almand on June 25 was only three ounces of a white powdery substance, which he doubted contained any cocaine at all.

B. *As to Count 4:*

Originally, the defendant was indicted on a two count indictment, which remained as counts 1 and 2 of a superseding four count indictment which was issued after defendant was arrested on an outstanding warrant for a March 23, 1988 possession of cocaine with intent to distribute. The superseding indictment also sought forfeiture of the Bronco vehicle in which defendant was driving on that date. Appellant does not attack the sufficiency of the evidence for his conviction on count 4, the possession count, but appeals from the denial by the trial court of his motion to suppress the cocaine seized after his arrest.

The facts leading up to the seizure of this cocaine are substantially as follows. On March 23, 1988, Roberson, while driving, was stopped by a Roswell city police officer for a minor traffic violation. At that time, by phoning to his superior officer, the officer learned of the outstanding warrant on the drug charge. The appellant drove into the parking lot of a bank, when the officer gave him a warning to stop. There, the officer conducted an inventory search during which he found a crown royal bag on the driver's side door. This bag contained a plastic bag containing a white powdery substance which was later determined to consist of 112 grams of 74 percent pure cocaine. Thereupon, the police officer arrested Roberson.

The magistrate heard Roberson's motion to suppress, and made factual findings including the following: Roberson was legally stopped at 10:00 p.m. by a police officer and was directed to stop in the parking lot of a bank. There, he identified himself by showing his driver's license and insurance papers. The officers then radioed the information to the Roswell police department which notified him that an outstanding bench warrant had been issued for defendant. At this point, and because no one else was present in the car, the police officer, Cressler, determined, in accordance with the policies of the Roswell police department, to impound the motor vehicle. He radioed for a wrecker. He then commenced, in accordance with the city policy, to inventory the contents of the motor vehicle. On opening the driver's door, Cressler observed a clear plastic package of suspected cocaine protruding out of the bag. He notified the Roswell police department of his find and he was then directed to suspend the inventory search pending the arrival of detective Rannow. When she arrived 20 minutes later, at about the same time as did the wrecker, the vehicle was towed to the Roswell police department where officer Cressler and detective Rannow completed their inventory search. When officer Cressler advised Roberson that the car was going to be impounded, Roberson requested that he be permitted to put it in the custody of an unnamed party but the officer denied this request.

C. *As to Count 3:*

The Bronco truck which Roberson was using the night he was arrested had been

purchased March 27, 1987 by a down payment of $10,000 made by Roberson's father's company, Utility Line of Georgia, Inc. The price was $18,966.04. The title papers and insurance, however, were taken out in the name of the appellant who remained in possession of the vehicle until his arrest. When the Bronco was purchased, Roberson, Sr. told appellant that it was his (Roberson, Jr.'s). The trial court held that in view of the short time between the date of purchase and the date of the illegal use of the vehicle, it still had its original value. There was no evidence to show how much, if anything, had been paid on the Bronco other than the original $10,000 deposit. The evidence showed that the Bronco had been disposed of by an independent automobile agency to an innocent party for value at the time the forfeiture judgment was entered.

### III. ISSUES

1. Whether the evidence was sufficient to support the defendant's conviction on Count Two.
2. Whether the district court properly denied the defendant's motion to suppress evidence relative to Count Four.
3. Whether the district court ruled properly in admitting evidence against the defendant.
4. Whether the district court's failure to apply the sentencing guidelines as to Count Four requires remand for resentencing.
5. Whether the order of forfeiture of substitute property was properly entered by the district court.
6. Whether the district court denied the defendant a fair trial by refusing to allow him to call the prosecuting attorney as a witness.

### IV. DISCUSSION

A. *Sufficiency of the Evidence as to Count 2*

The parties, of course, agree on the law of this Circuit as to the standard we should apply after a jury verdict has found a person guilty of a crime. As we stated in

*United States v. Migueles,* 856 F.2d 117 (11th Cir.1988):

> We must consider the evidence admitted ... 'in the light most favorable to the government, accepting all reasonable inferences that support the verdict,' *(United States v. Curra–Barona,* 706 F.2d 1089, 1091 (11th Cir.1983)), mindful that the evidence need not 'exclude every reasonable hypothesis of innocence [nor] be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.' *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

856 F.2d 117, 118.

 Appellant's principal contention on his claim that there was insufficient evidence to support his conviction of aiding and abetting possession with intent is that he never actually possessed any cocaine at all. He contends that although he bought what he says was three ounces of what was intended to be cocaine from Almand, he actually got a substance that was never actually proven to be cocaine. This evidence, however, is contradicted by testimony of Almand that he received a package from Roberson that was about the size of a loaf of bread, that was carefully preserved and shipped to a government chemist in Miami where it was analyzed and found to contain 31 ounces of cocaine of a purity of 82 percent.

Appellant claims that the field test that was given to the cocaine when it was delivered was inconclusive. That is immaterial, however, in light of the testimony that the same package was identified and marked and delivered to the chemist in Florida, who found it to be 82 percent pure cocaine. Appellant also contends that before the chemist made her advanced instrumental analysis, the substance that she received from Atlanta, had been combined with a substance from another package. To the contrary, this witness testified that before she mixed the contents of the two pack-

ages, she performed screening tests from which she determined that the substances were identical and that they both contained cocaine hydrochloride.[2]

Thus, the evidence from which the jury could find beyond a reasonable doubt that the defendant knowingly aided in the possession of with intent to distribute cocaine was that he obtained approximately 31 ounces of cocaine; that he delivered this to Almand; that Almand delivered it to Shaw who then undertook to sell it to Recane, the undercover agent; a government witness also testified that this quantity and purity of cocaine was more than would normally be acquired for personal consumption.

■ Appellant also complains that there were two gaps in the making of the chemical analysis. However, as recognized by the appellant, gaps in the chain of custody affect only the weight of the evidence and not its admissibility. *United States v. Lopez,* 758 F.2d 1517, 1521 (11th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). There was no evidence of tampering with this product. Under such circumstances, there is a presumption that the drugs were properly mailed to the laboratory. *See United States v. Kaiser,* 660 F.2d 724, 233 (9th Cir.1981), *cert. denied,* 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674 (1982).

B. *As to Count 4:*

■ Appellant's contention as to his conviction on Count 4 is the failure of the trial court to suppress evidence of the cocaine seized from his automobile at the time of his arrest on March 27, 1987. This challenge is based upon appellant's contention that he was stopped by an officer who had an investigatory intent and that the search of his Bronco was not a valid inventory

search. As to his claim that he was stopped because of an improper investigatory motive on the part of the police officer, there is nothing in the record to support this contention. Moreover, as this Court has held: "... the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search. *United States v. Prescott, supra,* 599 F.2d [103], 106 (5th Cir.1979)." *United States v. Bosby,* 675 F.2d 1174, 1179 (11th Cir.1982).

To avoid stopping in the street, defendant pulled his automobile onto the parking lot of a private corporation. At that time, there was no one present to whom he could give custody as he was arrested and taken to the police station. As the Supreme Court said in *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967): "[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case...." 386 U.S. at 59, 87 S.Ct. at 790. Further, as the Court said in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976): "[T]here is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." 428 U.S. at 376, 96 S.Ct. at 3100.

The Roswell police officer testified that the inventory search was in accordance with the standard police procedures of the city. Thus, we conclude as did the Court in *Opperman, supra:* "On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not 'unreasonable' under the Fourth

---

**2.** The testimony was as follows:

Q. What test did you perform?

A. I performed a series of screening tests. That is, I removed a small portion of white powder from each of the plastic bags [both of which were contained in government's Exhibit 6]. These and screening tests indicated that the substances were the same and they also indicated that the substance contained within government's Exhibit 6 was indeed cocaine hydrochloride.

I then took approximately a half ounce portion from each of the original plastic bags contained within government's Exhibit 6, combined that half ounce portion and performed advanced instrumental methods of analysis.

As a result of my testing of government's Exhibit 6 through the advanced instrumental analysis it is my opinion that the white powder contained within government's Exhibit 6 is cocaine hydrochloride.

Amendment." 428 U.S. at 376, 96 S.Ct. at 3100.

### C. *Appellant's Claim of Procedural Errors*

■ We have carefully considered appellant's contention that the trial court erred in several respects either by making comments on the evidence, by the admission of the testimony of a DEA agent as an expert on the quantity and purity of "street" sales of cocaine, by the voluntary statement by a witness that in a previous report Roberson had been described as "armed and dangerous," or by the admission of an extrinsic fact that Roberson had engaged in several marijuana sales under similar circumstances. We conclude that either because of cautionary instructions to the jury or because of other evidence, making any error harmless beyond a reasonable doubt, no reversible error was committed by the trial court with respect to any of these matters.

### D. *Failure to Sentence Appellant on Count 4 Under the Sentencing Guidelines*

■ The government does not dispute that Roberson was sentenced on Count 4 without reference to the Sentencing Guidelines which became effective prior to the commission of the offense of which Roberson was found guilty. Appellant contends that he should have been sentenced as for a level 18 offense under Section 2D1.1 Sentencing Guidelines. He, therefore, contends that this Court should remand the case to the district court for resentencing on Count 4.

We consider it inappropriate for us to remand the case for resentencing because of the fact that the two sentences were decided by the trial court to run concurrently, and the confinement under Count 4 is only five years, with supervised release of three years while the sentence under Count 2 was 10 years imprisonment with five years of supervised release. The sentence also assessed a monetary charge of $50 for each count under 18 U.S.C. § 3013. This same assessment would have applied if defendant had been sentenced under the

Guidelines. Therefore, we can see no possible prejudice to the defendant in the failure of the trial court to apply the Guideline sentencing. *Cf. Ray v. United States*, 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987).

### E. *Forfeiture of Substitute Property*

After the jury found in favor of the government in its count of the indictment claiming forfeiture of the Ford Bronco which was being driven by the defendant at the time of his arrest, the court entered the following order:

The Government's motion for an order of forfeiture of substitute property under 21 U.S.C. 853(p) up to the value of the 1987 Ford Bronco vehicle forfeited by the jury's verdict is hereby GRANTED. On October 3, 1988 the jury returned a special verdict of forfeiture against the 1987 Ford Bronco described in count III of the indictment. Subsequently, the subject vehicle was found to have been purchased by an innocent third party in February of 1988 from a McDonough auto dealership. The subject vehicle was illegally used to transport drugs on June 25, 1987.

The jury decided the issue of ownership of the vehicle adversely to defendant and that question, as raised by defendant in his brief in opposition to the Government's motion, is moot. In addition, the Government offered evidence as to its value three months before its illegal use. According to that document, the subject Bronco was purchased on March 27, 1987 for $18,906.04. Given the short period of time between purchase at the aforesaid price and the illegal drug transaction use on June 25, 1987, the court hereby ORDERS the forfeiture of substituted property of the defendant of an equal value or amount of $18,906.04.

Appellant contends that there was no evidence to support the jury's verdict that he was the owner of the Bronco and further contends that even if there was evidence of such ownership, the only evidence of the interest that the purchaser of the

Bronco had, was the $10,000 deposit that was paid when it was purchased.

 We conclude that there was ample evidence before the jury to permit it to make a finding of fact that appellant was the owner of the Bronco. He took out the title papers in his own name and kept the insurance in effect also in his own name for approximately 11 months. There was also evidence that appellant's father, who purchased it in the name of his company, stated that the Bronco would belong to appellant.

 We are of the view, however, that the trial court erred in fixing the amount of the value of substitute property to be forfeited. It is true that there was no evidence to indicate that either appellant or his father had made any additional payment on the Bronco beyond the initial $10,000 deposit. However likely it seems that some party must have kept the payments current, this cannot substitute for proof of the actual equity owned in the Bronco at the time of forfeiture. The maximum amount of the forfeiture of substitute property, therefore, should have been no more than $10,000.

### F. Prosecuting Attorney as Witness for the Defendant

During the trial, it became apparent that Almand had given a written statement to the investigating officers, but that in the statement he had omitted the name of the appellant, Roberson. He testified that he had omitted Roberson's name because Roberson had not, at that time, been arrested and he was physically afraid of threats which he said had been received from members of the Roberson family. In order to bolster the truth of his statement that he had already told the agents verbally about Roberson's participation in the deal, he sought to call as a witness the assistant U.S. attorney who was prosecuting the case. The trial court denied his request. The evidence that was sought was the evidence of what had happened at the plea bargaining between Almand and the U.S. attorney's office. There was no showing made that the only two persons present at

the plea bargain were Almand and the AUSA. In fact, Almand testified that he talked to "them" at the plea bargain, apparently referring to agent McAvoy.

 Appellant agreed that before the prosecuting attorney could testify for the defendant in this ongoing criminal trial, she would have to disqualify herself as counsel for the government. As the Court of Appeals for the Ninth Circuit has held, courts have properly refused to permit a prosecutor to be called as a defense witness "unless there is a 'compelling need.'" See United States v. Dupuy, 760 F.2d 1492, 1498 (9th Cir.1985); Dupuy cited United States v. Tamura, 694 F.2d 591, 601 (9th Cir.1982). In Tamura the Court of Appeals for the Ninth Circuit stated:

> The federal courts have universally condemned the practice of a government prosecutor's testifying at a trial in which he is participating; such testimony is permitted only if required by a compelling need. United States v. Schwartzbaum, 527 F.2d 249, 253 (2d Cir.1975), cert. denied, 424 U.S. 942, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976). See United States v. Birdman, 602 F.2d 547, 553 (3d Cir.1979) (collecting cases), cert. denied, 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980).

There could be no "compelling need" to call the prosecuting attorney unless she was a "necessary witness." Here, there were other witnesses available. Not only did Almand himself testify, but he stated in his testimony that at the plea negotiations, he was with "them." Moreover, at the hearing on the motion, the assistant U.S. Attorney stated in response to the court's question that she and Almand were never alone at the plea bargaining session. Defendant made no effort to subpoena anyone other than the AUSA.

We conclude, therefore, that the trial court did not err in declining to permit the prosecuting attorney to be called as a witness for the defense.

## V. CONCLUSION

We conclude, therefore, that the convictions on Counts 2 and 4 must be affirmed

and the forfeiture of substitute property is affirmed to the extent of the sum of $10,-000.

The judgments of conviction and sentence are therefore AFFIRMED, except that the judgment for substitute property is REMANDED to the trial court to be amended accordingly.