**UNITED STATES, Plaintiff,**

v.

**Eugene Robert WALLACH, Defendant.**

**No. S 87 Cr. 985 (RO).**

United States District Court, S.D. New York.

March 30, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Baruch Weiss and Elliot Jacobson, Asst. U.S. Attys., for U.S.

Riordan & Rosenthal, San Francisco, Cal. by Dennis Riordan, Robert J. Giuffra, Jr. and Ellen Yaroshefsky, New York City (Robert H. Bork, Washington, D.C., of counsel), for defendant Wallach.

## OPINION AND ORDER

OWEN, District Judge:

In the summer of 1989, I presided over a sixteen week trial, following which defendant Eugene Robert Wallach was convicted by the jury of various violations of federal criminal law arising out of his activities in connection with the Wedtech Corporation. That conviction was reversed on May 31, 1991 by the Court of Appeals for the Second Circuit and remanded for a new trial, *see United States v. Wallach*, 935 F.2d 445 (2d Cir.1991), familiarity with which is presumed. On remand to the District Court, and Wallach[1] coming before me again, Wallach now moves for three types of relief: a motion to recuse me from presiding over any retrial; a motion to disqualify Assistant United States Attorneys Baruch Weiss and Elliott Jacobson from representing the United States on any retrial; and a motion to dismiss the indictment in its entirety on grounds of double jeopardy. For the reasons stated below, each motion is denied.

### I. *Motion for Recusal*

Wallach moves to have me recuse myself from any retrial. Recusal is within the Court's discretion. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), *cert. denied*, 490 U.S. 1102, 109

---

1. Defendants Rusty Kent London and Wayne Franklyn Chinn did not join in the present mo-

tions. Chinn pled guilty to one Count of this indictment on March 27, 1992.

S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Unless there is good reason to recuse, a district judge ought *not* to recuse himself. *In re Drexel Burnham*, 861 F.2d at 1312; *National Auto Brokers v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).

Wallach bases his motion for recusal on 28 U.S.C. § 455(a) which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Wallach made clear in his motion papers, and reasserted at oral argument, that this motion is based not on any reasonable question as to "personal bias or prejudice", pursuant to 28 U.S.C. § 144, but only on the *appearance* of impartiality in some unspecified quarters.[2] At oral argument defense counsel stated:

> We are not raising a claim of personal bias under 28 U.S.C. 144. I have not submitted an affidavit claiming that you, your Honor, are bias[ed] personally against my client. I could not make such a sworn claim, your Honor.

■ But the "objective standard" for recusal under section 455(a), can not be met by pointing to in-court rulings or pronouncements based on information the judge learned by presiding over the case. *In re International Business Machines Corp.*, 618 F.2d 923, 929–30 (2d Cir.1980). "Prior adverse rulings 'without more, ... do not provide a reasonable basis for questioning a judge's impartiality.'" *Schiff v. United States*, 919 F.2d 830, 834 (2d Cir. 1990) *cert. denied*, —— U.S. ——, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991) (quoting *United States v. Wolfson*, 558 F.2d 59, 64

(2d Cir.1977)). Since the basis of Wallach's assertion of the appearance of impartiality is solely rulings or statements this Court made during trial or sentencing in response to matters adduced at trial, this argument fails.

■ Wallach also moves for recusal under *United States v. Robin*, 553 F.2d 8 (2d Cir.1977). *Robin*, 553 F.2d at 10, sets forth the factors considered by the Court of Appeals on an application to remand to a different judge.[3]

> Absent proof of personal bias requiring recusation, Title 28 U.S.C. § 144, [which is not alleged herein] the principal factors considered by us in determining whether further proceedings should be conducted before a different judge are (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

I note, initially, that the Court of Appeals, in its remand, made no suggestion that the retrial should be before a different judge. Nor were major views or findings at the trial determined to be erroneous or based on evidence that would have to be excluded on a new trial. Further, it is obvious that reassignment would entail an unjustifiable and unnecessary waste and duplication of judicial resources. I presided over this case for four years, gaining in-

---

**2.** During oral argument the following dialogue took place:

> THE COURT: ... you say to some [the Sharansky ruling] may appear unfair but you do not contend it was in fact unfair?
> MR. RIORDAN: Right.

**3.** Although Wallach incorrectly asserts that the common practice in the Southern District is for a retrial of a criminal case to be before a new judge, the actual practice is that "[a]s a general rule, cases sent back to a district court for further proceedings are remanded without any directions or suggestions as to the judge before

whom they are to be conducted. That matter is properly left to the district court." *Robin*, 553 F.2d at 9. The Second Circuit in *Robin* further held that, "Upon remand for a retrial, an additional factor bearing upon whether to reassign to another judge is whether the retrial will be before the judge as a fact-finder or sitting with a jury ... Where the judge sits as the fact-finder, reassignment is the preferable course, since it avoids any rub-off of earlier error.... No such problem is usually confronted upon retrial before a different jury." *Id.*, at 10.

depth familiarity with its numerous, complex issues and I note that no other Judge of this Court could help but be aware of the outcome of Wallach's prior trial and sentence, and therefore there is no realistic possibility of Wallach going forward with a clean slate.

■ Finally, this motion is clearly untimely. Although Wallach moves pursuant to 28 U.S.C. § 455 which has no timeliness requirement—unlike 28 U.S.C. § 144 [4] which requires that motions be filed in a timely manner—nevertheless, the timeliness requirement of section 144 has been read into section 455 and is applied with equal force to motions brought under this section. *Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir.1991); *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d Cir.1987); *In re International Business Machines Corp.*, 618 F.2d at 932. Under both sections, a motion for recusal should be made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Polizzi*, 926 F.2d at 1321, quoting *Apple*, 829 F.2d at 333.

As the basis for his motion, Wallach points only to facts arising during trial or at sentencing, all of which took place in 1989. Despite the fact that these events occurred over two years ago, Wallach did not seek recusal at the time he made his motion for new trial before me in 1990. Wallach argues, however, that the motion for recusal was not ripe until I had denied the motion and the Court of Appeals had reversed. This argument is without merit. The basis for a recusal motion is the perceived partiality of the District Court and such a motion becomes ripe at the time of the acts so perceived, and before further appearances in the District Court, not after a subsequent Appellate Court reversal.[5]

Accordingly, Wallach's motion to recuse is denied.

## II. *Motion to Disqualify Assistant United States Attorneys Weiss and Jacobson*

■ Wallach moves to disqualify Assistant United States Attorneys Baruch Weiss and Elliot Jacobson from prosecuting the retrial of this case on the ground that following the Second Circuit's reversal, they are now motivated by a desire to "vindicate" themselves and further that they are necessary witnesses who will be called to testify to statements made to them by Anthony Guariglia, a former Wedtech officer who testified over days as to Wallach's actions regarding Wedtech. As each of these claims derives from the government's use of Guariglia's testimony during the first trial, the events relating to Guariglia's perjury require some detailing.

Anthony Guariglia, Wedtech's president and a member of its board of directors, early pled guilty to certain charges and entered into a cooperation agreement with the government. He took the stand in this case to testify about dealings between the defendants and Wedtech. Guariglia, a compulsive gambler, had been prohibited from gambling by a Bankruptcy Court order and agreed to this prohibition in his cooperation agreement. This was designed to conserve his assets for Wedtech's creditors. On direct examination Guariglia testified that he had stopped gambling in the summer of 1988 and had not gambled at all from then to the time of trial in June 1989. In an effort to attack Guariglia's credibility, the defense in this case, on cross-examination, questioned Guariglia about his gambling and put before him gambling markers from an Atlantic City casino in September and October 1988. Guariglia admitted that he had signed the markers for a friend, but maintained that he had not personally gambled on those occasions. The defense then brought to the attention of the government and the Court certain record slips from the

---

**4.** Section 144 requires that a party "make[ ] and file[ ] a timely and sufficient affidavit" to support a claim of personal bias.

**5.** The timeliness requirement is here no mere incantation of a principle. Had the motion been made in 1990 and had it been granted, a successor trial judge would doubtless be in place today and somewhat up to speed. Also, the failure to make this motion at the proper time suggests that at that time nothing had registered with Wallach and his counsel to focus their attention on a need for such relief.

casino which defendants asserted showed that Guariglia had indeed gambled. At this point Assistant United States Attorneys Weiss and Jacobson along with the Chief of the Major Crimes Unit, Mark Hellerer, and then Deputy U.S. Attorney Louis Freeh conducted an investigation including extensive questioning of Guariglia regarding his trips to Atlantic City as well as discussions with individuals who were with Guariglia on those occasions. From this, the government concluded that Guariglia had not gambled during the time of the cooperation agreement and they argued his credibility to the jury accordingly.

Several months after the trial, in December 1989, the government received new information indicating that Guariglia had in fact gambled in Puerto Rico—not Atlantic City—during the period of the cooperation agreement. The government investigated the matter and determined that on the general gambling question Guariglia had perjured himself during the course of his testimony at trial. The government notified defense counsel and on June 26, 1990, Guariglia was indicted for perjury, a jury convicting him on February 27, 1991 of two counts of perjury committed during the course of the Wedtech trial.

Wallach moved for a new trial based on Guariglia's perjury. I denied this motion on April 4, 1990, *U.S. v. Wallach*, 733 F.Supp. 769 (S.D.N.Y.1990), concluding that there was "... neither allegation nor evidence that the prosecutors had any knowledge as to Guariglia's now-disclosed perjury," and that in the total picture the perjury going to credibility was so minor as not to be material. On Wallach's appeal, however, Judges Meskill and Keenan concluded that the government "should have known" that Guariglia was committing perjury, while Judge Altimari concluded that the government had no knowledge of Guariglia's perjury. All three agreed, however, that had the jury known of the perjury, "it probably would have acquitted...." There was no suggestion in the appellate opinion, though, that the prosecutors, well qualified attorneys who have developed this case for more than five years, should be relieved.

While Wallach claims that Weiss and Jacobson should be disqualified because of their alleged improper motivation in reprosecuting Wallach in order to "vindicate" themselves and "repair the damage done by Guariglia's perjury to their own careers", Wallach offers nothing beyond mere speculation to support this. Further, Wallach's claim that they are going forward with the retrial for impermissible personal reasons, is undermined by the fact that this retrial was personally authorized by the United States Attorney for the Southern District, Otto Obermaier, after discussions with Wallach's counsel and an opportunity for Wallach to present his arguments as to why the government should not proceed with retrial.

Secondly, Wallach seeks to disqualify Weiss and Jacobson on the ground that since Guariglia's perjury at the first trial will be in issue at the trial, Weiss and Jacobson will be necessary witnesses called to testify about statements made to them by Guariglia or, in prosecuting, will act as unsworn witnesses. Wallach asserts that in the event Guariglia takes the stand in the retrial, and denies his gambling or his false statements to the government in this regard, Weiss and Jacobson will be called to impeach him. First, it is not at all clear that Guariglia will be called as a witness, or if he is that he would deny gambling or making false statements to the government. Thus, evidence of Guariglia's perjury may not be relevant on a retrial, whether Guariglia is called or not called, and even if such evidence is deemed relevant, no showing has been made that Weiss or Jacobson will have to either testify in this regard or act as unsworn witnesses, as it is not clear that such evidence, if relevant, cannot be obtained through other heretofore fully sanctioned means.

■ The law does not liberally permit a defendant to call a prosecutor as a witness. On the contrary, a defendant must demonstrate a compelling and legitimate need to do so. *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975), *cert. denied*, 424 U.S. 942, 96 S.Ct.

1410, 47 L.Ed.2d 348 (1976); *United States v. Torres*, 503 F.2d 1120, 1124 (2d Cir.1974). Where witnesses other than the prosecutor can testify to the same matters or conversations, no compelling need exists. *United States v. Roberson*, 897 F.2d 1092, 1098 (11th Cir.1990). Consistent with the policy of the United States Attorney's office, whenever Assistant United States Attorneys Weiss and Jacobson interviewed Guariglia, a third party, and frequently more than one additional agent, was always present. This conforms with the ABA Standards Relating to the Prosecution Function stating, "[t]he prosecutor should avoid interviewing a prospective witness except in the presence of a third person," [6] which was designed to avoid precisely the problem raised by Wallach, namely that a prosecutor will be required to testify as to a conversation with a witness in the event a conflict arises. *United States v. Birdman*, 602 F.2d 547, 552–53 (3rd Cir.1979). This policy also eliminates the risk that either Weiss or Jacobson would be put in the position of an "unsworn witness" in the event that a dispute arose as to what occurred during a conversation with Guariglia as a third party can be called and thereby remove the need for the prosecutors to question Guariglia in such a way as to bolster their own credibility. *See United States v. Dennis*, 843 F.2d 652, 656 (2d Cir.1988) citing *United States v. McKeon*, 738 F.2d 26, 35 (2d Cir.1984). Thus, should any conversation between Guariglia and the government become relevant, and should it become necessary to call a witness to testify as to statements made by Guariglia, a third party, other than Weiss or Jacobson could be called.

Moreover, the necessity of calling any witness to testify to matters concerning conversations or agreements between the government and Guariglia is sharply reduced, if not eliminated, by the government's offer to stipulate to much of what Wallach says he wishes to introduce through testimony of the prosecutors.

Stipulations provide an adequate substitute for testimony and may eliminate the need to disqualify an attorney based on conversations between the attorney and a witness. *See States v. Diozzi*, 807 F.2d 10, 13–14 (1st Cir.1986). The government has offered to enter into a long list of stipulations regarding Guariglia's gambling, his perjurious denial of such gambling at trial, and the fact that these actions violated his cooperation agreement. The government has also offered to stipulate further, should such additional stipulations be relevant. Wallach also has the opportunity to attack Guariglia's credibility, should such attack be relevant, by introducing evidence of Guariglia's perjury conviction, Fed.R.Evid. 609(a)(2), and may be permitted to contradict testimony given at the retrial by reading portions of the transcript from the first trial.

Given the present prosecutors' familiarity with the case, gained through the extensive involvement they have had—Weiss since the inception of the case in early 1987 and Jacobson since 1988—it would cause an extreme waste of resources to order them now replaced. Wallach's assertion that hundreds of other Assistant United States Attorneys are available to handle the retrial is no answer and such a late-hour transfer could well severely prejudice the government. Wallach has failed to demonstrate that disqualification is necessary, and accordingly, the motion is denied.

### III. *Motion to Dismiss on the Ground of Double Jeopardy*

Finally, Wallach moves to dismiss the indictment on the ground that the Double Jeopardy Clause bars retrial. Wallach relies on *United States v. Burks*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), which held that the government may not retry a defendant after a reversal based on a lack of evidence. *Id.* at 11, 98 S.Ct. at 2147. Although throughout his brief Wallach argues that the Court of Appeals reversed

6. American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense

function. Section 3.1(f) quoted in *United States v. Birdman*, 602 F.2d 547, 552 (3rd Cir.1979).

his conviction because of insufficient evidence, that is not, in fact, the basis for the Court's reversal. Rather, in reversing the conviction because of Guariglia's perjury, the Court held that, had the jury known of Guariglia's false testimony it probably would have acquitted. Nowhere in its opinion did the Court of Appeals address the sufficiency of the evidence presented by the government as to Wallach's guilt.[7]

Indeed, Wallach in his appellate brief requested that the Court dismiss the indictment. The Court of Appeals declined to do so. Not only did it state, as Wallach concedes, that it was "remand[ing] for a new trial," but the Court indicated its assumption that the case would be retried by discussing defendants' additional arguments on appeal in light of "the likelihood of a new trial," advising the District Court on a clarification that should be made in the jury instructions "in the event of a retrial," and addressing an evidentiary problem which should be avoided "in the event of retrial." Accordingly, I conclude that Wallach's claim of double jeopardy is frivolous, and it is denied.

Accordingly, for the reasons stated above, each of Wallach's three motions is denied.

So ordered.

---

**7.** Indeed, had the Court of Appeals concluded that the evidence was insufficient, it had the authority to direct a judgment of dismissal. Pursuant to 28 U.S.C. § 2106, an appellate court "may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court … and may remand the cause and direct the entry of such appropriate judgment, decree, or order,

or require such further proceedings to be had as may be just under the circumstances." "Once the reviewing court has found the evidence to be legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal." *Burks,* 437 U.S. at 18, 98 S.Ct. at 2150.