

FILED

03/09/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 20-0587

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 20-0587

STATE OF MONTANA,

Petitioner,

v.

MONTANA EIGHTEENTH JUDICIAL
DISTRICT COURT, HONORABLE
JOHN C. BROWN, Presiding,

Respondent.

O R D E R

The State of Montana seeks a writ of supervisory control over the Eighteenth Judicial District Court, Gallatin County, to vacate that court's September 15, 2020 Order Denying State's Motion to Quash Subpoena Issued to Prosecutor Bjorn Boyer and Granting Defendant's Cross Motion to Disqualify Mr. Boyer from Representing the State at Trial in Cause No. DC-18-448C. Miller, via counsel, has responded in opposition to the State's petition. The District Court also responded, indicating that it stands by its order.

Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate. M. R. App. P. 14(3). The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. M. R. App. P. 14(3)(a)-(c). We decide on a case-by-case basis whether supervisory control is appropriate. *Stokes v. Mont. Thirteenth Judicial Dist. Court*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754 (citations omitted).

The standard of review on a motion to disqualify counsel is abuse of discretion. *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 26, 303 Mont. 274, 16 P.3d 1002.

"Ultimately, it is this Court's "constitutional mandate to fashion and interpret the Rules of Professional Conduct.' A district court therefore commits reversible error if it misapplies those rules." *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶ 14, 363 Mont. 366, 272 P.3d 635 (citing *In re Rules of Prof'l Conduct*, 2000 MT 110, ¶ 9, 299 Mont. 321, 2 P.3d 806, *Schuff*, ¶ 176 (Day, Dist. J., dissenting). A party seeking the testimony of the prosecutor trying the case "must demonstrate that the evidence is vital to his case, and that his inability to present the same or similar facts from another source creates a compelling need for the testimony." *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991) (citations omitted). The Ninth Circuit has reasoned:

> [A] defendant has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness. *United States v. West*, 680 F.2d 652, 654 (9th Cir. 1982). Nonetheless, the defendant's obligation to resort to alternative means of adducing factual testimony is not absolute. Both the quality and quantity of the alternate sources of evidence are proper subjects for comparison with that sought directly from the participating prosecutor.

*United States v. Prantil*, 764 F.2d 548, 551-52 (9th Cir. 1985). "Regardless of the prosecutor's view of the utility of his own testimony, the district judge is charged with the responsibility of making determinations as to the materiality of witness testimony." *Prantil*, 764 F.2d at 552. "The District Court's ruling on such a motion will not be reversed 'absent a clear and prejudicial abuse of discretion.'" *Watson*, 952 F. 2d at 986.

In December 2018, the State charged Miller with one count of sexual intercourse without consent, alleging that Miller, age 27 at the time of the alleged offense, had sex with a 14-year-old girl ("V1"). During the initial police investigation, V1 maintained that she and Miller were dating, but she denied they had had sex. V1 also asserted that she had lied to Miller about her age and that she had convinced him she was 18 years old. Miller admitted that he had had sex with V1, but he asserted that he believed she was 18.

Boyer, as prosecutor, filed the Information in Miller's case. In March 2020, Boyer, who had not yet met V1, learned she was being held in youth detention in Billings after using her mother's vehicle to run away from home. Boyer also learned that V1 might soon leave

2

the state. On March 7, 2020, Boyer traveled alone to Billings, where he met with V1 and her mother in order to explain the trial process and to attempt to establish a rapport with V1.

Boyer's meeting with V1 and her mother was not recorded. During the meeting, V1 told Boyer that she and Miller had had sex and that during their relationship, she had disclosed her age to Miller but convinced him to continue dating her. V1 explained that she had not previously disclosed this information because she had wanted to protect Miller. V1 also expressed anger that she had spent more time in jail than Miller had.

Upon his return, Boyer promptly e-mailed Miller's attorneys and informed them that he had interviewed V1 and that she had disclosed that she and Miller had had sex and that Miller knew she was 14 years old. Boyer did not at that time tell Miller's attorneys that V1 had stated she was mad at Miller because she had spent more time in jail than he had. Miller's attorneys indicated that they might wish to depose Boyer or to call him as a witness at trial because V1's credibility was increasingly at issue. At the final pretrial conference on August 27, 2020, defense counsel indicated that it intended to call Boyer as a witness at trial with regard to his interview of V1 in which she provided a different account of the matter than she had previously. After the pretrial conference, Boyer informed defense counsel about V1's statement that she was mad about spending more time in jail than Miller. Miller's counsel then subpoenaed Boyer for trial.

On September 3, 2020, the State moved for an affirmative ruling that Boyer is not a necessary witness under M. R. Pro. Cond. 3.7. The State also moved to quash the subpoena for Boyer's testimony. Defense counsel filed a cross-motion to disqualify Boyer as trial counsel. The District Court then issued its rulings denying the State's motion to quash the subpoena and granting Miller's motion to disqualify Boyer as trial counsel, for which the State now seeks supervisory control.

The State argues that this matter is appropriate for supervisory control because the correctness of the District Court's rulings presents purely legal issues, and allowing these rulings to stand would cause a gross injustice. The State further argues it has no adequate remedy of appeal, as a court ruling that allows a defendant to disqualify a prosecutor and call

3

the prosecutor as a witness is not grounds for the State to appeal in a criminal case. Section 46-20-103, MCA.

Miller contends that this case is not appropriate for a writ of supervisory control because it does not present purely legal issues. Acknowledging that the facts are not in dispute, Miller maintains nonetheless that because the District Court considered the underlying facts in reaching its conclusions, the issue is not "purely legal." Miller is incorrect. Although disqualification of counsel may not be susceptible to supervisory control where the underlying facts are disputed, *see Ahern v. Eighth Judicial Dist. Court*, No. OP 18-0054, 391 Mont. 538, 414 P.3d 756 (Feb. 20, 2018), the facts are undisputed in this instance. The question presented on the State's petition is the purely legal question whether the District Court abused its discretion when it concluded that Miller could subpoena Deputy Gallatin County Attorney Bjorn Boyer as a witness in his case, thus disqualifying Boyer from prosecuting the matter. As the State points out, it has no remedy of appeal from this ruling. We conclude this matter is appropriate for consideration upon petition for writ of supervisory control.

The State argues that the District Court erred in finding Boyer a necessary witness because Miller has alternatives to calling Boyer at trial. In the District Court, the State suggested Miller's counsel could interview V1 and she could sign an affidavit about her disclosures to Boyer, or a defense investigator could interview V1 and the State would waive hearsay objections to the investigator's testimony. The State also suggested V1's mother, who was present, could be called to testify about the conversation. Miller's counsel objected to these alternatives, arguing that Boyer's testimony would carry more credibility and weight; the District Court agreed.

Miller argues in response to the State's petition that the District Court correctly weighed the parties' arguments in determining that Boyer was a necessary witness. Miller's counsel argues that Boyer's meeting with V1 that evolved into an interview was "an inflection point where V1 changed from being an exculpatory witness to an accusatory witness" and that Boyer is the only person who can testify to certain aspects of the meeting,

4

including the meeting's initial purpose and the circumstances that led to it evolving into an interview.

Reviewing a trial court for abuse of its discretion, this Court does not ask if it agrees with the trial court but whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason, in view of all the circumstances, ignoring recognized principles and resulting in substantial injustice. *Schuff*, ¶ 27. A determination that an individual is a "necessary witness" is not amenable to firm rules but depends on the unique circumstances of each case. Undisputedly, Boyer did not initially intend to interview V1 on March 7, 2020. But the fact remains that V1 ultimately disclosed to Boyer a version of events that contradicted her earlier statements. Miller's counsel maintained, and the District Court agreed, that although V1's mother witnessed the interview, she is not in the same position as Boyer to testify to this interview at trial. As Miller points out, the State essentially asks us to reweigh the evidence presented to the trial court and reach a different conclusion: that is not this Court's function under an abuse-of-discretion standard.

The State rightly points out that a prosecutor should not be subject to automatic disqualification simply for meeting in advance of trial with a child sexual assault victim. The unique situation presented here, though, is that Boyer set up a meeting with V1 and her mother on short notice to introduce himself and establish a rapport with V1 after learning of V1's possible imminent departure from Montana. This meeting developed into an interview during which V1 provided information that contradicted her earlier recitation of events. Unfortunately, Boyer did not have an investigator or other neutral witness with him. Contrary to the State's characterization, the District Court did not hold that Boyer was a necessary witness simply because he met with V1. The court decided that Boyer was the only witness able to testify to the circumstances and substance of his interview of V1 should V1's trial testimony differ—as had her previous statements—notwithstanding the presence of V1's mother at the same meeting. The District Court in its discretion found these facts sufficient to conclude that Boyer was a necessary witness. The trial court's ruling is limited

5

to this case and does not fling the door open to defendants disqualifying prosecutors in any and all circumstances in which a prosecutor meets with a victim. Under the applicable standard of review, we cannot find a "clear and prejudicial abuse of discretion" in the District Court's ruling.

M. R. Pro. Cond. 3.7(a)(3) provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless disqualification of the lawyer would work substantial hardship on the client. Here, the State has not demonstrated that Boyer's disqualification would pose a substantial hardship. It is not preferable to switch counsel in the middle of a case and undoubtedly will pose inconvenience for the prosecution. But the State does not argue that no one else is available to try the case; the Gallatin County Attorney's Office has other deputies who could competently assume the role of prosecutor for this matter, which is currently set for trial several months away, in June 2021.

We have determined that the State has failed to demonstrate that the District Court operated under a mistake of law resulting in substantial injustice when it denied the State's motion to quash the subpoena issued for Boyer's trial testimony and granted Miller's cross-motion to disqualify Boyer as trial counsel.

IT IS THEREFORE ORDERED that the State's Petition for a Writ of Supervisory Control is DENIED. The District Court's September 15, 2020 Order in its Cause No. DC-18-448C is AFFIRMED.

The Clerk is directed to provide notice of this Order to all counsel of record in the Eighteenth Judicial District Court's Gallatin County Cause No. DC-18-448C and to the Honorable John Brown, presiding District Court Judge.

DATED this 9th day of March, 2021.

_____
Chief Justice

_____

6



Justices

Justice Laurie McKinnon, dissenting.

This Court has never analyzed under what circumstances a prosecutor becomes a "necessary" witness in the case he or she is prosecuting, particularly when a State's victim makes an inconsistent statement that hurts the defense's case by rendering him more culpable and offers other statements of only tangential impeachment value. The Court affirms the District Court's decision to disqualify the prosecutor without proper analysis or standards,[1] and places the burden on the State to "demonstrate[] that Boyer's disqualification would pose a substantial hardship [to the State]." The Court concludes the Gallatin County Attorney's decision to assign Boyer as lead prosecutor is of no consequence; implies that prosecutors are interchangeable; and concludes that the "Gallatin County Attorney's Office has other deputies who could competently assume the role of prosecutor for this matter" and

---

[1] The Court gives lip-service to rules of law and standards when it sets them out but does not follow them. The Court, here, falls on the discretionary standard of review to avoid following the clear, reasonable, and workable analytic framework for evaluating the prosecutor-witness rule.

7

"the State does not argue that no one else is available to try the case." Most respectfully, management of the numerous County Attorney Offices is committed to the executive branch of government. This Court should not be in the business of shuffling prosecutors to handle the cases; evaluating the competency of County Attorney's Offices; or deciding there are available unnamed attorneys who can act as substitutes for the prosecutor. In my opinion, while the disqualification of a participating prosecutor may be warranted on occasion, the law does not permit a defendant to liberally call a prosecutor as a witness. Moreover, *a defendant must demonstrate a compelling and legitimate need* for the prosecutor's testimony. Where there are other available means for presenting the evidence, such as through a third party who can testify to the same matters or conversations, *no compelling need exists*.

This Court has never addressed the analytical framework for considering when a prosecutor is a necessary witness in a case requiring disqualification. Federal courts, however, have identified a clear framework to be employed. To begin, "the federal courts have almost universally [condemned] the practice of a Government prosecutor testifying at the trial of a case he [or she] is prosecuting . . . and have stated that the practice should be permitted only in extraordinary circumstances or for compelling reasons." *United States v. Birdman*, 602 F.2d 547, 553 (3d Cir. 1979). *See also United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975); *United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir. 1974); *United States v. Clancy*, 276 F.2d 617, 636 (7th Cir. 1960), *rev'd on other grounds*; *United States v. Pepe*, 247 F.2d 838, 844 (2d Cir. 1957); *United States v. Alu*,

8

246 F.2d 29, 33-34 (2d Cir. 1957); *Christensen v. United States*, 90 F.2d 152, 154 (7th Cir. 1937). Accordingly, requests for such testimony are disfavored. *United States v. Prantil*, 764 F.2d 548, 552-54 (9th Cir. 1985).

As requests for a prosecutor's testimony are "condemned" and "disfavored," "[t]he party seeking such testimony must demonstrate that the evidence is vital to his [or her] case, and that his [or her] inability to present the same or similar facts from another source creates a compelling need for the testimony." *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991) (citation omitted). A defendant has "an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness." *Prantil*, 764 F.2d at 551(citation omitted). "Nonetheless, the defendant's obligation to resort to alternative means of adducing *factual* testimony is not absolute." *Prantil*, 764 F.2d at 551-52 (emphasis added) (citation omitted). Both the quality and quantity of "alternate sources of evidence are proper subjects for comparison with that sought directly from the participating prosecutor." *Prantil*, 764 F.2d at 552. Where the statement made to a prosecutor has value only as duplicative impeachment, courts have rejected the need to have the prosecutor abdicate his or her role as advocate. *See United States v. Tamura*, 694 F.2d 591, 601 (9th Cir. 1982). Thus, a distinction exists between statements with value as impeachment and those relating to factual testimony.

The professional impropriety of assuming a dual role as advocate and witness has long been acknowledged. The ABA has codified disciplinary rules designed to prevent this conflict and to minimize the prejudicial potential of conflicting roles when prevention is

9

impossible. The ABA Standards Relating to the Prosecution Function make clear that these rules apply to prosecutors as well.

> A prosecutor should avoid the prospect of having to testify personally about the content of a witness interview. The prosecutor's interview of most routine or government witnesses (for example, custodians of records or law enforcement agents) should not require a third-party observer. But when the need for corroboration of an interview is reasonably anticipated, the prosecutor should be accompanied by another trusted and credible person during the interview. The prosecutor should avoid being alone with any witness who the prosecutor reasonably believes has potential or actual criminal liability, or foreseeably hostile witnesses.

American Bar Assoc. Standards for Criminal Justice, Prosecution Function Standards 3-3.4(f) (4th ed. 2017). Here, Boyer interviewed the victim in the presence of a third person. Boyer also recognized the potential impeachment value of the victim's statements and, among other remedies he suggested, agreed to stipulate to the statements made during the interview and provide an affidavit from the victim as to the statements she made. Boyer thus removed the potential for conflict by abiding by these standards. Under these circumstances, Miller should not be allowed to choose disqualification over other remedies that adequately protect his rights of confrontation and compulsory process. This prosecution, like many sexual offenses, was challenging because of the victim's age and indecisiveness. However, this sort of prosecution is not unique, and prosecutors should not be subjected to disqualification challenges simply because they have witnesses who provide varying versions of the offense.

10

Although disqualification of a prosecutor is disfavored, a defendant has a competing and countervailing interest in the right of confrontation and compulsory process. The Supreme Court, on this point, has admonished:

> The need to develop *all relevant facts* in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the *facts*. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the *facts*, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

*United States v. Nixon*, 418 U.S. 683, 709, 94 S. Ct. 3090, 3108 (1974) (emphasis added), *rev'd on other grounds*. To emphasize, courts have disfavored allowing a defendant to call the prosecutor as a witness in the defendant's case. *Prantil*, 764 F.2d at 551. Recognizing the possibility for abuse, the Ninth Circuit and other courts require that a defendant demonstrate a "compelling need" before a participating prosecutor will be disqualified and called as a "necessary" witness.

Here, Miller cannot present a compelling need for Boyer's testimony. First and foremost, the victim's statements were witnessed by her mother who is available and can testify to those statements. *"Where witnesses other than the prosecutor can testify to the same matters or conversations, no compelling need exists."* *United States v. Wallach*, 788 F.Supp. 739, 744 (S.D.N.Y. 1992) (citing *United States v. Roberson*, 897 F.2d 1092, 1098 (11th Cir. 1990)). Second, the offense charged was statutory rape. During the victim's March 7th interview, she indicated that she had, in fact, told Miller, who was 27 years old,

11

that she was only 14 years old—a statement clearly not helpful to the defense's case. The victim's statement about her age helped the prosecution's case; Boyer's credibility, as a former prosecutor in the case, would weigh heavily on his credibility as a witness. Finally, while inconsistent with a statement made earlier to police—that she had convinced Miller she was over 18 years old—the statement made during the March 7th interview could be used only for impeachment purposes. The victim would be available at trial and subject to cross-examination. The victim's displeasure at having been detained longer than Miller has tangential and questionable impeachment value.

Underlying all of these circumstances, however, is Miller's refusal to consider *any* of the proposed remedies Boyer suggested: defense counsel could interview the victim; the victim could sign an affidavit about what she told Boyer and her mother; a defense investigator could interview Boyer and the State would waive hearsay objections so the testimony from the defense investigator could be admitted; and, the State would stipulate to the victim's damaging statements made during the interview. The value of the statements was entirely for purposes of impeachment and to attack the victim's credibility in a statutory rape prosecution. A third person who was available to testify witnessed the statements. The District Court's order, in a paragraph, disqualified Boyer because the State had subpoenaed him as a witness.

I disagree with the Court that there was no abuse of discretion when Miller could present the victim's impeachment testimony through a third person and when there were other means available to obtain the same evidence. The State does not have the burden of

showing "substantial hardship" or that no one else was available to try this case. While there undoubtedly will be occasions where disqualification of the participating prosecutor is necessary for a fair presentation of the facts, and to vindicate a defendant's rights of confrontation and compulsory process, this is not one of them. Under the aforementioned rules and standards, the Court is required to assess the quality of the evidence and the availability of other means to present the same evidence. In my opinion, the Court has failed in this regard and, instead, chosen to rest its decision on the discretionary standard of review. I dissent from the Court's order affirming the District Court's disqualification of Boyer as the prosecutor.

_____
Justice

Justice Dirk Sandefur joins in the Dissent of Justice McKinnon.

_____
Justice

Justice Jim Rice joins in the conclusions of law reached by Justice McKinnon, and would reverse the District Court's order.

_____
Justice

13