**UNITED STATES of America**

v.

**Russell White BROTHERS, Jr., G. Thomas Nebel, and Thomas White Brothers.**

**No. 3–92–00102.**

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 26, 1993.

Hal McDonough, Wendy Goggin, Asst. U.S. Attys., Nashville, TN, for plaintiff.

---

Michael E. Terry, Nashville, TN, for defendant Russell Brothers.

J. Sedwick Sellers, III, Washington, DC, Larry D. Thompson, Atlanta, GA, for defendant Thomas Nebel.

William H. Jeffress, Jr., Paul F. Enzinna, Miller, Cassidy, Larroca & Lewin, Washington, DC, Nashville, TN, for defendant Thomas Brothers.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the motions (filed December 15, 1992; Docket Entry No. 173, and December 21, 1992; Docket Entry No. 189, respectively) of Thomas Brothers and Russell Brothers to disqualify Wendy Goggin and Harold McDonough as attorneys for the government in this case; the memoranda (filed December 15, 1992; Docket Entry No. 174, and December 21, 1992; Docket Entry No. 190, respectively) in support of the motions; the government's responses (filed January 20, 1993; Docket Entry Nos. 225 and 226, respectively) to the motions; and the transcript (filed February 17, 1993; Docket Entry Nos. 246-50) of the hearing on the motions held February 1-4, 6, 1993.

After a careful review of all the pleadings and exhibits in the record, as well as the transcript of the hearing on the motions, for the reasons stated below, the Court denies the motions to disqualify the attorneys for the government in this case.

## I.

On October 24, 1988, Russell Brothers was convicted in a Florida state court on drug trafficking, conspiracy and RICO charges arising out of his importation of cocaine into the United States. He was fined one million dollars and sentenced to sixty years in prison. While incarcerated, Russell Brothers was served with a federal criminal complaint[1] filed in the Northern District of Florida, which charged him with conspiracy to import and distribute cocaine in the United States in violation of 21 U.S.C. §§ 963 and 846.

After he was served with the criminal complaint, Russell Brothers retained attorney Stephen K. Johnson to represent him. Mr. Johnson contacted David L. McGee, the First Assistant United States Attorney in the Northern District of Florida, and told him that Russell Brothers was willing to cooperate with the government and forfeit certain assets. Mr. Johnson and Mr. McGee reached an agreement whereby Russell Brothers would cooperate with, and forfeit assets to, the Northern District of Florida, and in return Russell Brothers would not be indicted in the Northern District of Florida and Mr. McGee would notify the appropriate authorities (including the Florida Statewide Prosecutor, the District of Montana and the Middle District of Tennessee) of his cooperation.[2]

Mr. McGee contacted the Middle District of Tennessee as a result of his promise to contact other law enforcement agencies to inform them of Russell Brothers' cooperation with the Northern District of Florida. He had several telephone conversations with Assistant United States Attorneys Harold McDonough and Wendy Goggin from the Middle District of Tennessee. The purposes of the telephone conversations were to coordinate the investigations of the two districts

---

1. According to David L. McGee, the First Assistant United States Attorney in the Northern District of Florida, the criminal complaint was issued for two reasons. First, it was issued in connection with the pending prosecution of Russell Brothers in order to get jurisdiction over assets located outside the Northern District. Transcript of proceedings held February 1-4, 6, 1993 at 20 (McGee). Second, it was issued to obtain Russell Brothers' assistance in the prosecution of Allan Ross, a "large scale drug trafficker" with "international connections." *Id.* at 21, 18 (McGee). Before the criminal complaint was issued, Russell Brothers had refused to cooperate

in the investigation and prosecution of Allan Ross. *Id.* at 21-22 (McGee).

2. In accordance with this agreement, Mr. McGee wrote a letter to Joseph L. Larrinaga, Chief Assistant Prosecutor for the State of Florida, on July 8, 1992. *See* defendant's exhibit No. 3 to proceedings held February 1, 1993. In his letter, Mr. McGee outlined Russell Brothers' substantial assistance (including providing information and testifying) in the federal prosecution of Allan Ross. *Id.* Russell Brothers' sentence subsequently was reduced, making him immediately eligible for parole for his state convictions.

and to ask Mr. McDonough and Ms. Goggin to consider Russell Brothers' cooperation with the Northern District of Florida during the course of their own negotiations with him.

As a result of these telephone conversations, and contacts by Mr. Johnson, Mr. McDonough and Ms. Goggin decided to take Russell Brothers' proffer, which they did on November 21 and 22, 1991. The ground rules for the proffer were set out in a letter from Mr. McDonough and Ms. Goggin to Mr. Johnson, dated November 19, 1991. The letter was signed by Russell Brothers and Mr. Johnson on November 21, 1991. Under these ground rules, Russell Brothers was to provide "truthful and complete" information, which information could not be used against him (except for impeachment), and the Middle District of Tennessee could make full derivative use of his statements. The letter did not contain any promises with regard to the disposition of the case against Russell Brothers in the Middle District of Tennessee. To the contrary, it specifically provided that "[t]he United States ... would consider the proffer in determining the appropriate disposition of this case."

On November 21, 1991, the first day of the proffer, Mr. McDonough and Ms. Goggin met briefly with Russell Brothers. Also present at that meeting were Mr. Johnson, IRS agent James Bolton, and DEA agent Carl Lilley. This meeting was primarily an introductory meeting, with the attorneys and agents asking background questions and establishing the groundwork for the following day's meeting. The attorneys and agents did not believe Russell Brothers' answers to some of their questions during this first meeting.

In addition to those present at the first meeting, those present on November 22, 1991, included IRS agent Burnie Avrit, Davidson County police detective Ruel Camacho, and DEA agent Richard Dunn. During the course of this meeting, Russell Brothers made numerous statements of fact which could be interpreted as incriminating Thomas Brothers of the crimes for which he has been indicted. For example, he stated that Thomas Brothers set up West End Management, that the $10,000 earnest money for the farm in Williamson County (which came from Thomas Brothers' escrow account) was originally from Russell Brothers, and that Russell Brothers had arranged at least one cocaine delivery at the farm (where Thomas Brothers was living at the time). However, Russell Brothers steadfastly denied that Thomas Brothers had any knowledge either of the true source of his money or that he was involved in smuggling cocaine.

Russell Brothers argues that he was told during the course of the proffer that if he told the truth, everything would be alright. In essence, Russell Brothers claims he was told that if he told the truth he would not be prosecuted in the Middle District of Tennessee, that he told the truth, but that he is being prosecuted because the truth is not what the government really wanted to hear. According to Russell Brothers, the "truth" the government wanted to hear was that Thomas Brothers knew of his drug trafficking and that the money was thereby tainted.

The government agrees that they did not believe Russell Brothers' answers during the proffer. However, the government asserts that they did not threaten or in any way promise Russell Brothers that he would not be prosecuted if he implicated Thomas Brothers. The government states that it admonished Russell Brothers to tell the truth in accordance with the terms set out in the proffer letter. The agents and attorneys from the Middle District of Tennessee present at the proffer, however, did not believe his responses to their questions. They decided, therefore, to present an indictment before the federal grand jury.[3]

Both motions to disqualify are based on the November 21 and 22, 1991, proffer. The defendants argue that Mr. McDonough and Ms. Goggin are participants in, and witnesses to, alleged promises of immunity made to Russell Brothers if he would implicate Thomas Brothers. Therefore, the attorneys should be disqualified from representing the

---

**3.** Russell Brothers was indicted on July 23, 1992 (Docket Entry No. 1). Thomas Brothers was indicted pursuant to a superseding indictment on August 6, 1992 (Docket Entry No. 2).

United States at trial because they may be called as witnesses or, even if not called as witnesses, they will be cloaked with "witness verity" in the eyes of the jury. The government responds that the defendants have failed to show that Mr. McDonough and Ms. Goggin are necessary witnesses or even the expected subject matter of their testimony and its admissibility.

## II.

█ It is well established that an attorney representing the government cannot act both as prosecutor and witness. *See United States v. Johnston,* 690 F.2d 638, 642–43 (7th Cir.1982) *(en banc ).* Several policies underlie this rule.

First, the rule eliminates the risk that a testifying prosecutor will not be a fully objective witness given his position as an advocate for the government. Second, there is fear that the prestige or prominence of a government prosecutor's office will artificially enhance his credibility as a witness. Third, the performance of dual roles by a prosecutor might create confusion on the part of the trier of fact as to whether the prosecutor is speaking in the capacity of an advocate or of a witness, thus raising the possibility of the trier according testimonial credit to the prosecutor's closing argument. Fourth, the rule reflects a broader concern for public confidence in the administration of justice, and implements the maxim that "justice must satisfy the appearance of justice." This concern is especially significant where the testifying attorney represents the prosecuting arm of the federal government.... United States Attorneys are expected to adhere to the highest standards of professional behavior and to be worthy of public trust and confidence.

*Id.* at 643 (citing *United States v. Birdman,* 602 F.2d 547, 553–55 (3d Cir.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980)).

The policies underlying this advocate-witness rule "apply equally when a prosecutor implicitly testifies to personal knowledge or otherwise attains 'witness verity' in a case in which he appears as an advocate for the government." *United States v. Hosford,* 782 F.2d 936, 939 (11th Cir.1986), *cert. denied,* 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986). However, "mere first hand knowledge of facts that will be proved at trial is not a per se bar to representation." *Id.* at 938.

█ In this case, it is as yet unclear whether Mr. McDonough or Ms. Goggin will be called as witnesses by either Russell or Thomas Brothers. Both defendants have stated that it is not presently their intent to call either attorney as a witness. Assuming that the defendants do decide to call the attorneys as witnesses, "a defendant has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness." *United States v. Prantil,* 764 F.2d 548, 551 (9th Cir.1985) (citing *United States v. West,* 680 F.2d 652, 654 (9th Cir.1982)); *United States v. Watson,* 952 F.2d 982, 986 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1694, 118 L.Ed.2d 406 (1992). This obligation is not absolute, however. An examining court should compare "both the quality and quantity of the alternate sources of evidence." *Prantil,* 764 F.2d at 551–52.

█ In this case, there were many other investigating agents present at Russell Brothers' proffer who can testify to what occurred during the meetings. This is not a case where only the defendant and the prosecuting attorney have knowledge of material discussions. Therefore, Mr. McDonough and Ms. Goggin should not be compelled to testify.

The defendants argue that, even if the government attorneys do not testify, having participated in the contested meetings, they will be cloaked with "witness verity." Thomas Brothers has focused the Court's attention on two instances during the hearings on these motions where Mr. McDonough phrased questions to a witness in a manner which could be interpreted as testimonial.[4]

---

4. *Cross-examination of Stephen Johnson by Mr.*     McDonough:

This could be cured by Mr. McDonough and Ms. Goggin phrasing their questions in a neutral fashion at trial. If the subject of the November 21–22, 1991, proffer does become a contested issue at trial, the trier of fact will no doubt learn that Mr. McDonough and Ms. Goggin participated in the proffer. However, the Court is not convinced at this juncture that mere knowledge of their presence is sufficient to disqualify them from this trial.

### III.

For the reasons stated above, the Court shall deny Russell Brothers and Thomas Brothers motions to disqualify Mr. McDonough and Ms. Goggin as attorneys for the government in this case.

An appropriate order shall be entered.

Q. Do you remember [Russell Brothers] being asked was Tommy Brothers in the room, in the same room as were you and Mr. Nebel were meeting?
A. Yes.
Q. And did he reply that in fact Tommy Brothers was there in the same room?
A. I believe that he did, yes.
Q. He did say that Tommy Brothers was actually in the same room where he and Mr. Nebel were meeting, isn't that correct?
A. Yes. I do recall that.
Q. And he indicated that the purpose for he and Mr. Nebel meeting there in that office was to lay out a paper trail to cover up this money, isn't that correct?

A. I really can't recall that, Mr. McDonough. Trans. at 508.
*Further cross-examination:*
Q. Mr. Johnson, I believe you will agree that I told you that, one, this was not the type of case a polygraph really lent itself to, isn't that correct?
A. Yes, sir.
Q. And that number two, I frankly didn't believe that polygraph machines were trustworthy?
A. Yes.
*Id.* at 525.