COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Athey and White
Argued by videoconference

DANIEL TORRES CRUZ, SOMETIMES KNOWN AS
  DANIEL TORRES-CRUZ

v.      Record No. 1850-23-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
MAY 20, 2025

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

H. Eugene Oliver, III (Evans Oliver, PLC, on brief), for appellant.

Sandra M. Workman, Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.

This case concerns a criminal trial in which the Circuit Court of Rockingham County ("trial court") convicted Daniel Torres Cruz ("Cruz") of two counts of forcible sodomy and one count of aggravated sexual battery. On appeal, Cruz contends that the trial court erred: 1) when admitting in evidence the Commonwealth's expert testimony; 2) when finding the evidence sufficient to establish the element of penetration in support of Cruz's convictions for forcible sodomy; 3) when failing to find the testimony of the victim inherently incredible; 4) when failing to issue a subpoena compelling the testimony of the Commonwealth's prosecuting attorney; and 5) when imposing the sentence following conviction. Finding no error, we affirm.

I. Background[1]

On August 16, 2021, Cruz was indicted on two counts of forcible sodomy, in violation of Code § 18.2-67.1, and on one count of aggravated sexual battery, in violation of Code § 18.2-67.3. The alleged offenses occurred between February 28, 2016, and February 28, 2018, when the victim, Y.T.,[2] was under 13 years old.[3] Trial by jury was set for May 31, 2022.

On March 28, 2022, the Commonwealth notified Cruz, pursuant to Rule 3A:11(b)(4)(A), that they were requesting the trial court qualify Marcella Rustioni ("Rustioni") to testify as "an expert [in] the dynamics of child abuse and the process of disclosure." In support, the Commonwealth provided Rustioni's curriculum vitae (CV), which referenced her master's degree in social work as well as her 20 years of experience working with child abuse victims. In further support, the CV cited over a dozen programs Rustioni had taught relating to child sexual abuse as well as her extensive specialized training in evaluating and assisting children who had previously experienced sexual abuse. In response, on May 27, 2022, Cruz filed a motion *in limine* challenging Rustioni's qualifications to testify as an expert, including both the nature and necessity of Rustioni's expected expert testimony. The Commonwealth responded to the motion *in limine*, in part, by asserting that the likelihood and nature of delayed reporting by child sexual assault victims was not within the jury's common knowledge. Therefore, Rustioni's expected expert testimony would assist the jury and thus should be permitted.

---

[1] "On appeal, we review the evidence 'in the "light most favorable" to the Commonwealth, the prevailing party in the circuit court.'" *Womack v. Commonwealth*, 82 Va. App. 289, 292 n.1 (2024) (quoting *Konadu v. Commonwealth*, 79 Va. App. 606, 609 n.1 (2024)). "Doing so requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Konadu*, 79 Va. App. at 609 n.1).

[2] We use the victim's initials to protect her privacy.

[3] During the time frame covered by the indictment, Cruz was also a juvenile.

On May 17, 2022, Victoria Jensen ("Jensen"), the Assistant Commonwealth's Attorney assigned to Cruz's case, met with Y.T. to discuss her testimony while preparing for trial. Two professional support staff members, Nicole Terrell ("Terrell") and Kim Myers ("Myers"), were also present and participated in the meeting. During their discussion, Y.T. advised that Cruz "told her not [to] tell anyone and that 'something bad' would happen to her brother.'" On the morning set for the commencement of the jury trial, the Commonwealth sent Cruz's trial counsel an email advising him of the statement made by Y.T. during the May 17, 2022 meeting. The email also advised that the statement was potentially inconsistent with a statement Y.T. had previously given during a forensic interview wherein she had advised the forensic nurse that Cruz "wouldn't threaten [her]" and "told [her] not to tell anybody." As a result, the trial court continued the jury trial to December 6, 2022, to permit trial counsel for Cruz to further investigate the disclosure.

On November 15, 2022, Cruz moved for the trial court to issue a subpoena compelling Jensen to testify as a witness during the upcoming jury trial. In support, Cruz asserted that even though there were two other potential witnesses present during the meeting with Y.T., issuance of the subpoena was "essential" to protect his right to "[d]ue [p]rocess and to call witnesses on his behalf under the Fifth, Sixth, and Fourteenth Amendments." Three days later Cruz moved for a second continuance of the jury trial. In response, the trial court vacated the previous December 6 jury trial date and continued the matter for a hearing to consider the pending motion to issue the witness subpoena compelling Jensen's testimony. During the subsequent hearing, the trial court heard testimony from Myers that she did not recall what was said at the May 17, 2022 meeting with Y.T. Terrell testified that she "believe[d] [Y.T.] said that [Cruz] told her not to tell anybody or that he would hurt her brother." The Commonwealth also offered to stipulate to Y.T.'s statement. Based upon the testimony and argument of counsel, the trial court denied Cruz's

motion for the issuance of a witness subpoena on Jensen and reset the matter for a jury trial to commence on April 26, 2023.

At trial, following voir dire and opening statements, Y.T. testified during the Commonwealth's case in chief that while in "first or second grade," she lived with her grandmother in a trailer along with Cruz and another uncle. She further testified that while living in the trailer, Cruz "touched [her] inappropriately without [her] consent" in her "chest area" and that the abuse happened multiple times. She also testified that Cruz touched her "vagina area" with his hands more than once. In fact, when asked if Cruz "touch[ed] your vagina or somewhere else near your vagina," Y.T. responded "[m]y vagina." Y.T. also recalled another time while she was on "the bed" with her little brother that Cruz started touching her "around [her] vagina area" and her "butt." Y.T. also advised the jury about an occurrence where Cruz "asked" her "to suck on his penis." She stated that Cruz "put his penis in [her] mouth" and that he would "make [her] hand touch it" or "put it on [her] stomach." When asked about her little brother being present for these incidents, Y.T. explained that she didn't tell him what was going on because she also "didn't even understand what it was" when she was younger. She also explained that Cruz told her to "be quiet" and that "something bad would happen if [she] told anybody."

Y.T. also described another incident to the jury whereby Cruz "would take his hand and like put his fingers inside my vagina" and "would just like touch it." This abuse would "happen at night," and she would "just wake up to, to like something like him touching me" with her clothes off. Y.T. further detailed for the jury how Cruz would use his "penis, his hands and sometimes his mouth" to "rub" her vagina. When asked about Cruz using his mouth, Y.T. responded that Cruz would "lick [her] sometimes and like down in my vagina area he would lick

- 4 -

me down there." When asked again to clarify what she meant by "vagina area," Y.T. explained she was referring to "[her] vagina" and that this occurred "[m]ore than one time."

Y.T. further recalled that "a lot of the times" when Cruz touched her, her grandmother would "be sleeping either like in the living room or in the bed with us." She remembered that the touching would also sometimes occur when she and Cruz were alone in the trailer. Y.T. also explained to the jury that she did not tell her parents about the abuse because she was both ashamed and "not really close" with her parents.

During cross-examination, Y.T. explained that several family members would visit her grandmother's trailer but "wouldn't stay the night." When asked whether she thought to tell her other uncle or grandmother that Cruz was "touching [her] inappropriately," Y.T. responded that she did not. When questioned about her statement that Cruz threatened that "something bad would happen" to her if she told anyone what he had done, Y.T. confirmed the veracity of her previous statement made during the Commonwealth's case in chief. Y.T. was also asked during cross-examination if she recalled participating in a forensic interview in which she told the interviewer "not once, not twice, but three different times that [Cruz] never threatened you?" Y.T. responded "I don't think that's a threat," and elaborated by adding that Cruz "didn't say it was to me specifically" but just that "something bad would happen."

When the Commonwealth called Rustioni to testify as an expert witness during its case in chief, counsel for Cruz renewed his pretrial objection to her qualifications and expected testimony on the same grounds. Following oral argument, the trial court limited her expert testimony to "sexual abuse dynamics, behavioral and emotional changes and the process of disclosure when it comes to [a] forensic interview." Counsel for Cruz noted his objection to the court's decision on the record, asserting that Rustioni "ha[d] not interviewed the complaining witness" or engaged in "clinical activities" before further asserting that Rustioni's expected

expert testimony "[was] not based on any actual imputable data or definitive medical or physical evidence."

Rustioni testified that she was a licensed clinical social worker, having completed a master's degree in social work, including two years of post-master's work before passing the licensing exam. She renews her license every two years. Rustioni also testified that she had completed specific training regarding "sexual abuse dynamics, disclosure, trauma, memory, suggestibility, child development and mental health issues." She further testified to having previously conducted several trainings as well as having completed interviews concerning abuse with approximately 3,000 children. Her CV was also introduced into evidence by the Commonwealth. Rustioni had previously been qualified as an expert in child sexual abuse at least 17 times, including as an expert witness for a criminal defendant. Over Cruz's objection, Rustioni was qualified by the trial court as an expert in "sexual abuse dynamics and behavioral and emotional changes associated with abuse" and permitted to offer expert opinions concerning those matters. Rustioni initially provided testimony to the jury about what "grooming" behaviors were and said that it was "quite common for those interactions [between alleged offenders and victims] to look normal and comfortable even while the abuse is happening." She clarified that she had never met Y.T. and did not base her testimony on interactions with her, but rather her testimony was "based on [her] knowledge and experience." On cross-examination, Rustioni admitted that her expert opinion concerning sexual abuse dynamics was "not a diagnostic tool."

At the close of the Commonwealth's case in chief, Cruz moved to strike the Commonwealth's evidence, asserting that Y.T.'s testimony was "wholly incredible." In further support, Cruz contended that "penetration is insertion into" and that "just because something occurs on the . . . surface of the vagina does not mean it is penetration." The trial court denied the motion to strike. Cruz did not present any evidence during his case in chief before renewing

his motion to strike the evidence on the same grounds, which was denied again by the trial court. After the jury was instructed and closing arguments completed, the jury deliberated and returned a guilty verdict on all three indictments.

Post trial and pre-sentencing, Cruz moved to set aside the verdict on September 8, 2023. Following argument, the trial court denied the motion to set aside the verdict as contrary to the law and evidence. On September 13, 2023, the trial court heard evidence from the Commonwealth and Cruz with respect to sentencing. The trial court took the sentencing decision under advisement before pronouncing its sentence on October 18, 2023. The trial court indicated that it had "considered all of the evidence" and had taken time from the September hearing so that it could "review some documents" and go "through the case again." The trial court noted that it was a "difficult decision in this particular case because of the timing of the events" but that it found it "appropriate" to apply the guidelines, which had a midpoint of 20 years and 5 months. The trial court further noted that "the Commonwealth [was] requesting much more time" but the court was not going to agree with the Commonwealth's position after considering Cruz's "age at the time of the offense, the events, [and] his efforts towards rehabilitation." The trial court then sentenced Cruz to 50 years on each sodomy count with 42 years suspended on each count and sentenced Cruz to 10 years with 5 years suspended for the aggravated sexual battery count, for a total of 21 years of active incarceration. Cruz appealed.

## II. ANALYSIS

### A. *Standard of Review*

"[T]he admission or exclusion of expert testimony is a matter within the sound discretion of the circuit court, and we will reverse the circuit court's judgment only when the court has abused this discretion." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 92 (2021) (citing *Keesee v. Donigan*, 259 Va. 157, 161 (2000)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006). "A

court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022).

"Ordinarily, we review questions regarding admissibility of evidence for an abuse of discretion." *Brown v. Commonwealth*, 54 Va. App. 107, 112 (2009).[4] When evidence is challenged on Confrontation Clause grounds, we review the alleged violation of constitutional rights de novo. *Robertson v. Commonwealth*, 61 Va. App. 554, 559 (2013) (en banc).

It is well settled that "[w]hen a defendant challenges the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in the trial court." *McArthur v. Commonwealth*, 72 Va. App. 352, 367 (2020) (quoting *Rowland v. Commonwealth*, 281 Va. 396, 399 (2011)). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." *Id.* (quoting *Cordon v. Commonwealth*, 280 Va. 691, 694 (2010)). We need only determine, upon reviewing the evidence in the light most favorable to the prosecution, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021).

"A court's assessment of punishment, when the sentence 'does not exceed the maximum sentence allowed by statute,' is reviewed for an abuse of discretion." *Woodard v. Commonwealth*, 287 Va. 276, 280 (2014) (quoting *Rawls v. Commonwealth*, 272 Va. 334, 351 (2006)).

---

[4] Solely reviewing Cruz's challenge to the issuance of a subpoena for the prosecutor under Rule 3A:12 would merit applying an abuse of discretion standard of review. *Bennett v. Commonwealth*, 236 Va. 448, 464 (1988) (holding that such a decision is within the "sound discretion of the trial court"). But here, rather than solely arguing that the judge abused his discretion under Rule 3A:12, Cruz brings a constitutional challenge under the Sixth Amendment *and* Rule 3A:12, arguing that the judge violated his constitutional rights by failing to issue a subpoena for the prosecutor. As such, we apply a de novo standard of review.

B. *The trial court did not err in admitting the testimony of the Commonwealth's expert witness.*

Cruz alleges that the testimony of Rustioni "improperly bolster[ed] the credibility of [Y.T.]'s testimony" and "opin[ed] on issues of fact in controversy in the case."[5]  We disagree.

"When the admissibility of the expert's testimony is subsequently challenged on appeal, that testimony must be viewed as a whole." *Commonwealth v. Allen*, 269 Va. 262, 274 (2005) (citing *Hussen v. Commonwealth*, 257 Va. 93, 99 (1999)); *see Stevens v. Commonwealth*, 72 Va. App. 546, 553 (2020).  "In criminal proceedings, opinion testimony on the ultimate issues of fact is not admissible."  Va. R. Evid. 2:704(b).  But "the mere fact that an expert's testimony tends to prove an ultimate fact in issue does not preclude the witness from testifying on a subject." *Zook v. Commonwealth*, 31 Va. App. 560, 566 (2000).  "'Ultimate issues of fact' for purposes of the conviction of a crime are the statutory elements of that offense." *Bowman v. Commonwealth*, 30 Va. App. 298, 303 (1999).  "An expert may provide general testimony about memory formation and common post-abuse behavior but may not directly comment on the credibility of any witness." *Thomas v. Commonwealth*, No. 1429-22-4, slip op. at 30 (Va. Ct. App. Mar. 12, 2024).[6]  Expert testimony has been upheld by this Court in *Faust v.*

---

[5] Cruz's argument that "[t]he sole purpose of Rustioni's testimony was to bolster the credibility of the Commonwealth's main witness and suggest that her delayed report and other actions were consistent with being a victim of sexual abuse" is not properly before us.  All the case authority cited by Cruz relates to his argument regarding Rustioni's testifying as to the "ultimate issue," and he cites no authority for his argument that her testimony was improper "bolstering."  Additionally, Cruz asserted at oral argument that he was making a "*Daubert*-style challenge" to Rustioni's testimony but likewise does not advance any argument regarding Rustioni's qualifications on brief.  As such, we do not consider these sub-arguments. *See* Rule 5A:20.

[6] We rely on unpublished cases for their informative and persuasive value.  Rule 5A:1(f); *see Osman v. Commonwealth*, 76 Va. App. 613, 653 n.23 (2023).  Also, after the panel decision in *Thomas* was taken en banc, its mandate was stayed pending resolution of that appeal. *Thomas v. Commonwealth*, 82 Va. App. 80, 92 (2024).  But as it was not part of the opinion that was reviewed en banc, this Court left "undisturbed" Part II of the panel opinion, which affirmed the trial court's ruling that permitted the Commonwealth's expert to testify. *Id.*; Rule 5A:35(b)(1).

*Commonwealth*, No. 1345-22-2, slip op. at 12 (Va. Ct. App. Mar. 5, 2024), where it "did not opine, either directly or indirectly, on a specific witness's veracity or credibility." The *Faust* panel also held that because the expert "did not opine regarding either child's specific statements" that they "did not invade or otherwise impermissibly encroach upon the province of the jury." *Id.* (citing *Fitzgerald v. Commonwealth*, 223 Va. 615, 630 (1982)).

Here, Rustioni was qualified by the trial court to testify as an expert in the field of sexual abuse dynamics and behavioral and emotional changes associated with abuse. She testified minimally as to what grooming behaviors were and that it is common for the relationship between an offender and victim to appear outwardly normal while abuse is ongoing. Although the expert testimony supported the prosecution's theory of the case, the testimony did not go far enough to violate Virginia Rule of Evidence 2:704(b). *Bowman*, 30 Va. App. at 303. At no point in her testimony did Rustioni state that Y.T. should be believed because her behavior was consistent with grooming or sexual abuse, or that because there was no immediate outward change in the relationship between Cruz and Y.T. that this indicated the presence of ongoing abuse. *See Davison v. Commonwealth*, 18 Va. App. 496, 504 (1994) (reversing a conviction where the prosecutor's question to their expert witness "specifically concerned" the testimony of a particular witness and was "clearly intended" for the expert to opine on the witness's truthfulness). In fact, Rustioni clarified that she had never met Y.T. and that her expert testimony was solely based on her knowledge and experience rather than any opportunity she had to evaluate Y.T.'s credibility. Rather, Rustioni's testimony generally provided information about sexual abuse dynamics that may or may not have existed between Y.T. and Cruz, a conclusion that was left to the jury to determine. Since the jury retained ultimate authority to make a finding as to Y.T.'s credibility, Rustioni's testimony did not interfere with the jury's responsibility. *See Kilpatrick v. Commonwealth*, 73 Va. App. 172, 192 (2021) ("[B]ecause the nature of this

testimony is implicit and indirect—that is, it comes short of expressing a direct opinion on an ultimate issue—it does not invade the province of the jury.").  As the persuasiveness of Y.T.'s testimony remained a question of credibility for the jury, we find no abuse of discretion in the trial court's decision to admit Rustioni's testimony.  *Davis v. Commonwealth*, 79 Va. App. 123, 148 (2023) (holding that "it is the function of the trier of fact, in this case the respective juries, to determine the credibility of witnesses and the weight afforded the testimony of those witnesses").

C. *The trial court did not err in denying the issuance of the witness subpoena compelling the testimony of the Assistant Commonwealth's Attorney who was prosecuting the case.*

Cruz contends on appeal that the circuit court "unfairly restricted [his] due process rights to put on relevant evidence" by not issuing a subpoena for the prosecuting attorney, which, he argues "was an improper invasion of [his] right[] to put on his own case."  We disagree.

The Sixth Amendment to the Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."  *See Moreno v. Commonwealth*, 10 Va. App. 408, 416 (1990).  "[T]his right is central to the proper functioning of the criminal justice system.  It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense."  *Massey v. Commonwealth*, 230 Va. 436, 442 (1985).  But "[t]he principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right."  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  "[A] trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor.  But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests."  *Grattan v. Commonwealth*, 278 Va. 602, 623 (2009) (quoting *Taylor*, 484 U.S. at 414).  The right to compel witnesses, therefore, is not absolute but must "bow to accommodate other legitimate interests in the criminal trial process."  *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973); *see United States v. Scheffer*, 523 U.S. 303, 308 (1998)

- 11 -

(holding that a "defendant's right to present relevant evidence is not unlimited"); *United States v. Powell*, 226 F.3d 1181, 1199 (10th Cir. 2000) (holding that the court may restrict the presentation of testimony when the government's "interest in excluding the evidence outweigh[s] the defendant's interest in its admittance").

In Virginia, "the general rule is that an attorney is competent to testify when the testimony is important and no other witness would be able to supply it." 20 Michie's Jurisprudence § 11.1 (citing *United States v. Nyman*, 649 F.2d 208 (4th Cir. 1980)); s*ee Gajewski v. United States*, 321 F.2d 261, 268-69 (8th Cir. 1963) (noting that "an accused's right to call relevant witnesses and to present a complete defense may not be abrogated" to protect a prosecutor from testifying if the prosecutor "possesses information vital to the defense"). And although Virginia law permits "[a] subpoena for the attendance of a witness to testify before a circuit court" to be issued "by the attorney for the accused," any witness subpoena which is "directed to a member of the bar of this Commonwealth or any other jurisdiction" is unique in that it must be "approved in all specifics, in advance, by a judge of the circuit court." Rule 3A:12.

Commonwealth's Attorneys and their assistants are unique members of the bar of Virginia in that they are "obligat[ed] to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." *Price v. Commonwealth*, 72 Va. App. 474, 485 (2020) (citing Va. R. of Prof. Conduct 3.8 cmt. 1); *see Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987) (recognizing that the prosecutor has a "distinctive role" in the criminal justice system). Indeed, a prosecutor is "in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88 (1935). Because of this unique role in the administration of justice, calling the managing prosecutor in a case as a witness for the defense

- 12 -

in that same case has been "universally condemned" by the federal courts and is "permitted only if required by a compelling need." *United States v. Tamura*, 694 F.2d 591, 601 (9th Cir. 1982); *see United States v. Birdman*, 602 F.2d 547, 552-53 (3d Cir. 1979) (requiring "extraordinary circumstances" and a "compelling and legitimate" need for the prosecutor's testimony).[7] When other witnesses are available, there is not a "compelling need." *United States v. Roberson*, 897 F.2d 1092, 1098 (11th Cir. 1990) (denying defense request to subpoena the prosecutor where defendant made no effort to subpoena anyone else). A participating prosecutor should not be called as a witness "unless all other sources of possible testimony have been exhausted." *United States v. West*, 680 F.2d 652, 654 (9th Cir. 1982); *see United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir. 1974) (concluding that the prosecutor should not have been permitted to testify where there was no showing that no other individuals were available to testify).

But "the defendant's obligation to resort to alternative means of adducing factual testimony is not absolute," and courts look to "the quality and quantity of the alternate sources of evidence" and compare them to the utility of the prosecutor's testimony. *United States v. Prantil*, 764 F.2d 548, 551-52 (9th Cir. 1985) (reversing a trial court's denial of a subpoena to the prosecutor where the only alternative was that the defendant testify to the facts in question); *see*

---

[7] Many of our sister state courts have reached the same conclusion. *See Johnson v. State*, 326 A.2d 38, 45 (Md. Ct. Spec. App. 1974) (requiring that the prosecutor's testimony "must be relevant and material to the theory of the defense" and "must not be privileged, repetitious, or cumulative" before a subpoena is issued); *State v. Colton*, 663 A.2d 339, 346 (Conn. 1995) (holding that a defendant wishing to call the prosecutor as witness must show that the testimony is necessary, rather than merely relevant, and that all other sources of comparable evidence have been exhausted), *cert. denied*, *Connecticut v. Colton*, 516 U.S. 1140 (1996); *State v. Simmons*, 155 A.D.2d 893 (N.Y. 1989) (holding that a trial court had not abused its discretion in denying the defendant's request to call the prosecutor as a witness when the defendant had failed to show a need for the testimony and the prosecutor had offered to stipulate to the facts that the defendant sought to elicit from the prosecutor); *see also State v. Inman*, 720 S.E.2d 31 (S.C. 2011); *People v. Wilson*, 649 N.E.2d 1377 (Ill. App. Ct. 1995).

*United States v. Dupuy*, 760 F.2d 1492, 1498 (9th Cir. 1985) (denying subpoena for prosecutor when three federal agents were present for a debriefing but not subpoenaed).[8]

Although our Supreme Court has not addressed this issue as directly as our sister states and the federal circuits, it has made clear that "it is not desirable for the Commonwealth's Attorney to testify as a witness on a material point in a case. The circumstances are rare indeed where any lawyer may properly testify in a case in which he is participating as an advocate." *Bennett*, 236 Va. at 464. It has also noted that:

> When one deems it to be his duty to testify in a case in which he also appears as an attorney, he is, while a witness, subject to all the limitations imposed upon other witnesses, and when the prosecuting attorney does so he is under the added sanction of his high office, which, while if convinced that the evidence justifies a conviction, imposes upon him the duty to prosecute vigorously and fearlessly, also requires him to respect all of the legal rights of the prisoner.

*Mohler v. Commonwealth*, 132 Va. 713, 730 (1922). Further cautioning against a witness subpoena for a prosecutor is our Supreme Court's guidance that "if a Commonwealth's attorney expects to testify on a material point he should retire from the case and let another be appointed to prosecute." *Durrette v. Commonwealth*, 201 Va. 735, 745 (1960). Indeed, federal courts have also noted that if the prosecutor handling the matter could be subpoenaed without reserve, "[s]uch disqualifications would, of course, be tremendously inefficient and disruptive to the prosecution of criminal cases." *United States v. Wooten*, 377 F.3d 1134, 1142 (10th Cir. 2004).

---

[8] The availability of alternative witnesses has consistently been used by federal district courts as a ground on which to uphold a defendant's Sixth Amendment rights while not requiring the assignment of a new prosecutor. *See United States v. Bin Laden*, 91 F. Supp. 2d 600, 624 (S.D. N.Y. 2000) ("Because those third parties can testify as to everything that occurred during those interviews, any need for [the prosecutors] to testify is quite limited."); *United States v. Brothers*, 856 F. Supp. 388, 391 (M.D. Tenn. 1993) ("In this case, there were many other investigating agents present . . . who can testify to what occurred during the meetings. . . . Therefore, [the prosecutors] should not be compelled to testify.").

Accordingly, consistent with guidance from our Supreme Court and the overwhelming consensus of the federal circuits and several states, we hold that issuing a subpoena to the prosecutor handling a case is permitted only if required by a compelling need. *Tamura*, 694 F.2d at 601. When inquiring whether there is such a compelling need, courts should look to the quality and quantity of the alternatives available and whether the defendant has exhausted them. *Prantil*, 764 F.2d at 551-52.

Here, there were two witnesses with active recall of the meeting where the allegedly inconsistent statements were made, namely Terrell and Jensen. There is no indication in the record that Cruz issued a subpoena for Terrell to appear at trial. Although Cruz argued that Jensen should have been subpoenaed because she had the most "vivid" memory of the interview, he presents no case law to support such an interpretation of the Sixth Amendment that would allow him to simultaneously maintain that he was unable to subpoena witnesses in his favor when a favorable witness was available whom he did not subpoena.

Furthermore, although Cruz assigns error only to the failure of the trial court to issue a subpoena for Jensen, it was clearly his intention to ask Jensen about the details of the meeting between Jensen and Y.T., specifically as to the allegedly exculpatory statement. Regardless and independent of whether the trial court had authorized Jensen's presence at trial as a witness, Cruz was afforded an opportunity to cross-examine Y.T. about the alleged inconsistent statements, to which Y.T. explained that she understood the statement that "something bad would happen" to not be a threat, as she did not believe it was directed at her. As Cruz was able to directly confront Y.T. with the allegedly inconsistent statements at trial independent of any subpoena, he is unable to convincingly claim that inadequate alternative sources were available to him or that he exhausted those alternative sources. Accordingly, we hold the circuit court did not deny Cruz his due process rights by not issuing a subpoena for Jensen.

D. *The evidence was sufficient to convict Cruz of all charges, as the Commonwealth sufficiently proved the element of penetration and Y.T.'s testimony was not inherently incredible.*

Cruz argues that the Commonwealth failed to prove the element of penetration because "the use of the term 'vagina area' suggests that [Y.T.] intended to describe the external areas of her genitalia, not the internal portions of the vagina." He also argues that "the reason for the delayed report and the escalation in seriousness of the allegations is incredible and contrary to human experience." We disagree. We first address Cruz's argument as to the sufficiency of the evidence, specifically as it pertains to the element of penetration for the crime of sodomy. We then address his argument regarding Y.T.'s testimony for all three charges.

"Penetration is an essential element of the crime of sodomy." *Ryan v. Commonwealth*, 219 Va. 439, 444 (1978). "[P]enetration of any portion of the vulva—which encompasses the 'external parts of the female sex organs considered as a whole' and includes, beginning with the outermost parts, the labia majora, labia minora, hymen, vaginal opening and vagina—is sufficient to show penetration." *Love v. Commonwealth*, 18 Va. App. 84, 88 (1994) (citation omitted). Penetration of "any portion of the vulva is sufficient to prove sodomy by cunnilingus" and "[p]enetration of the vaginal opening or vagina is not required." *Horton v. Commonwealth*, 255 Va. 606, 613-14 (1998) (upholding a conviction where the victim's testimony was that the defendant "put his mouth on [the victim's] vaginal area").

The conclusions of the jury "on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness's] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). There is no requirement of a corroborating eyewitness in sexual assault cases because, as the Supreme Court of Virginia has aptly stated, a "requirement of corroboration would cause most

sex offenses to go unpunished" given the clandestine nature of such crimes. *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984). Multiple cases recognize that a "victim's youth, fright and embarrassment certainly provide[] the jury with an acceptable explanation for [delayed reporting of sexual assault]." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991); *see Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (holding that a 12-year-old victim's delayed report due to her fear of the defendant and "shame and embarrassment at what was happening to her" was consistent with human experience); *Love*, 18 Va. App. at 90 (holding that a 13-year-old victim's 7-year delay in reporting ongoing sexual abuse did not render her testimony incredible as a matter of law).

Here, despite her age, Y.T. used the anatomically correct terms "penis" and "vagina" throughout her testimony, testifying that Cruz asked her "to suck on his penis" and that Cruz "put his penis in [her] mouth." She also described another incident where Cruz "would take his hand and like put his fingers inside my vagina" and "would just like touch it." Y.T. described how Cruz would use his "penis, his hands and sometimes his mouth" to "rub" her vagina and that Cruz would "lick [her] sometimes and like down in [her] vagina area he would lick [her] down there." When asked to clarify what she meant by "vagina area," Y.T. said she was referring to "[her] vagina." Accordingly, the Commonwealth presented sufficient evidence for the jury to find the element of penetration.

Additionally, Y.T.'s testimony was not inherently incredible. Y.T. testified that many of the instances of inappropriate touching by Cruz occurred at night and that her grandmother would be sleeping while they occurred. She also testified that there were some instances of abuse that occurred when it was only her and Cruz in the trailer. She further testified that she did not believe her little brother knew what was going on at the time because of his age and that she did not confide in her parents because she was ashamed of what had happened. None of this

testimony is "so contrary to human experience as to render it unworthy of belief." *Johnson*, 58 Va. App. at 315. As noted in our case law, a delay in reporting sexual assault does not render testimony inherently untrustworthy and does not by itself create an impossibility that what Y.T. testified to was true. Neither does the presence of another person, particularly one who is asleep or one who is very young, render Y.T.'s testimony inherently incapable of belief. Therefore, the evidence was sufficient to convict Cruz on all three charges.

E. *The trial court did not err in its sentencing of Cruz.*

Cruz also asserts that the trial court erred when sentencing him because the trial court allegedly failed to consider the evidence presented and "failed to adequately consider the nature and circumstance" of his offenses. We disagree.

"A reviewing appellate court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Jones v. Commonwealth*, 71 Va. App. 597, 603 (2020) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "When a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Abdo v. Commonwealth*, 218 Va. 473, 479 (1977) (internal citation omitted). "Once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

Here, Cruz was sentenced to 50 years of incarceration with 42 years suspended on each count of sodomy. In addition, he was sentenced to 10 years of incarceration with 5 years suspended on the aggravated sexual battery conviction. For each conviction, the punishment given is within the statutory range. *Abdo*, 218 Va. at 279; *see* Code § 18.2-67.1(B) (punishing sodomy by "confinement in a state correctional facility for life or for any term not less than five

years"); Code § 18.2-67.3(B) (punishing aggravated sexual battery by "confinement in a state correctional facility for a term of not less than one nor more than 20 years and by a fine of not more than $100,000"). The court also took the sentencing decision under advisement for more than a month so that it could go "through the case again." Furthermore, the trial court stated on the record that it "considered all of the evidence," explicitly noting Cruz's "age at the time of the offense, the events, [and] his efforts towards rehabilitation." As a result, the trial court imposed a lower sentence than the sentence requested by the Commonwealth. Accordingly, since the trial court carefully considered all the evidence presented to it and imposed a sentence within the statutory range, our review is concluded. *See Thomason*, 69 Va. App. at 99.[9] We affirm.

### III. CONCLUSION

Thus, we hold that the trial court did not err in admitting Rustioni as an expert witness for the Commonwealth, since she did not testify about Y.T.'s credibility as alleged by Cruz. Furthermore, the trial court did not err by failing to issue a witness subpoena to Jensen. Cruz could have subpoenaed at least one other alternative witness to testify to the statement and in the alternative, Cruz was able to impeach Y.T. with her allegedly inconsistent statements regardless of the issuance of any witness subpoena to Jensen. In addition, the evidence was sufficient to find Cruz guilty on all charges, in part, because Y.T.'s testimony established the element of penetration and her testimony was otherwise not inherently incredible. Finally, the trial court did not err in sentencing Cruz, in part, because the trial court explicitly considered Cruz's age in

---

[9] Cruz argues "[t]o the extent necessary" that "there is a good faith basis to overturn any adverse case law in Virginia that would suggest a sentence cannot be challenged" because of the defendant's age. But neither Cruz nor the Commonwealth identify any precedent that *prevents* trial courts from giving weight to a defendant's age in their sentencing determination. But as the court here explicitly *did* consider Cruz's age and neither party has identified any prohibition on doing so, it is unclear what case law, if any, Cruz is referring to.

- 19 -

crafting a sentence and imposed a sentence within the statutory range on each conviction.

Accordingly, we affirm the judgment of the circuit court.

*Affirmed.*